# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 15-114V
(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *   Filed: June 3, 2016
MICHAEL D. HUDSON,                            *
                                              *
              Petitioner,                     *
                                              *   Attorney's Fees and Costs;
       v.                                     *   Reasonable Fees; Case Settled
                                              *   Without Rule 4(c) Report.
SECRETARY OF HEALTH                           *
AND HUMAN SERVICES,                           *
                                              *
              Respondent.                     *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Tyler G. Doyle*, Smyser, Kaplan & Veselka, L.L.P., Houston, TX, for Petitioner.

*Lynn E. Ricciardella*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On February 4, 2015, Michael Hudson filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that he developed Guillain–Barré syndrome ("GBS") and chronic inflammatory demyelinating polyneuropathy as a result of his November 1, 2012, receipt of the influenza ("flu") vaccine and that he experienced residual effects of this injury for more than six months. The case was settled in less than one year, without Respondent ever filing a Rule 4(c) Report, and I issued a decision awarding Petitioner compensation on January 20, 2016. ECF No. 21.

On March 31, 2016, Petitioner filed a Motion requesting an award of attorney's fees in the

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

amount of $49,517.50, reflecting the work of both the attorney who appeared in this case (Mr. Tyler Doyle), as well as another attorney who did not appear (Mr. Jacob Paschal). Fees Motion, dated March 31, 2016 (ECF No. 27) ("Mot.") at 1-2. In addition, Mr. Hudson requested $10,735 in paralegal fees, plus litigation costs of $7,486.25, a sum that included $6,000 in expert fees incurred in the case for the services of Dr. Ahmet Höke, at a rate of $500 per hour. *Id.*; *see also* Pet'r's Ex. 6, filed February 12, 2015 (ECF No. 7). In accordance with General Order No. 9, Petitioner's counsel also represented that Mr. Hudson incurred no out-of-pocket expenses.

On April 18, 2016, Respondent filed a brief in reaction to Petitioner's Motion. ECF No. 28. Respondent asserts that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for Respondent in the resolution of a request by a Petitioner for an award of attorney's fees and costs." *Id*. at 2. Respondent added that she "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id*. at 2, n.2. However, she maintained that a reasonable amount for fees and costs in the present case would fall between $22,000 and $33,000. *Id*. For substantiation, she offered several cases involving the flu vaccine that were settled within a year of filing, and where no expert report was ever filed. *Id.* (citations omitted).

Petitioner filed a reply on April 27, 2016. ECF No. 29. Petitioner argued that Respondent's proposed range was based on inapposite cases in which experts were never consulted with, and/or where the total damages award was smaller. Reply at 1-2. He also stressed the fact that, to the extent the requested fees seemed high for a case that settled so rapidly, it was due to the fact that the case was developed for nearly a year before its actual filing – and thus the utility of the time devoted to it was reflected in the successful outcome. *Id.* at 3. And he noted that the hours devoted to the matter were not high when considered on a monthly basis rather than in the aggregate. *Id.* at 4.

## ANALYSIS

### I. Legal Standards for Fees Requests

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of attorney's fees and costs. However, such fees and costs must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters have discretion in determining what a reasonable fees award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fees petition on a line-by-line basis. *Saxton*

*v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight percent of the numbers of hours for which compensation was sought). Rather (as the United States Supreme Court instructs) when awarding attorney's fees special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC for Vaccine Act cases); except where an attorney's work was not performed in the forum and there is a substantial difference in rates. *Avera*, 515 F.3d at 1348. This is the *Davis* exception to the forum rule, which applies if the bulk of the attorney's work was performed outside of Washington, DC, in a location where prevailing rates are substantially lower than the forum rate. *Avera*, 515 F.3d at 1349, (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

Evaluating an attorney's fees application involves more than the mere performance of a mathematical calculation. In all stages of the lodestar calculation, I must determine if the fees applicant has established the reasonableness of the billing rate and work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and

establish the reasonableness of each dollar, each hour, above zero").[3]

Petitioners bear the same reasonableness burden in seeking an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

**II.     Petitioner's Attorney's Fees Request**

   A.     Applicable Rates

Petitioner requests that the attorneys in this matter (Messrs. Doyle and Paschal) receive $400 per hour and $350 per hour, respectively, for their services. Other special masters have previously found that lawyers practicing in large Texas cities such as Houston are entitled to the forum rate. *Garrett v. Sec'y of Health & Human Servs.*, No. 14-17V, 2014 WL 6237497, at *7 (Fed. Cl. Spec. Mstr. Oct. 27, 2014) (Houston is a forum jurisdiction); *Tieu Binh Le v. Sec'y of Health & Human Servs.*, No. 07-895V, 2014 WL 4177331, at *3-4 (Fed. Cl. Spec. Mstr. July 31, 2014) (Dallas-Fort Worth region is a forum jurisdiction). Although it is clear from the billing records that both lawyers on this case performed their work outside of the actual forum for Vaccine cases (Washington, DC), I find (relying on the well-reasoned logic of prior decisions like *Garrett* or *Tieu Binh Le* involving similarly-situated counsel) that the Houston local rate is not substantially lower than the forum rate, and thus the latter may be applied to counsel in this case.[4]

A recent decision—*McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015)—set forth forum hourly rate ranges for attorneys of different levels of experience. *McCulloch*, 2015 WL 5634323, at *19. I have previously noted that

---

[3] Although *Mares* did not interpret the Vaccine Act's fees provisions, other fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

[4] Petitioner did not offer proof establishing that Huntsville, Texas should be afforded the same forum treatment as Houston or Dallas. However, Respondent has not objected that Huntsville constitutes an out-of-forum location. Moreover, I find that Huntsville is geographically close enough to Houston to merit a comparable billing rate. *See, e.g.*, *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072, 2015 WL 10435023, at *11 (Fed. Cl. Spec. Mstr. Nov. 10, 2015) (attorneys practicing outside of New York City in northeastern New Jersey cities entitled to forum rates, whereas attorneys hundreds of miles away in southern New Jersey considered out-of-forum under *Davis* exception).

*McCulloch* is well-reasoned, and have accordingly embraced it in determining attorney's fees rates for other counsel. *See, e.g.*, *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *11 n.16 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (Arizona-based attorney entitled to forum rate). I will similarly apply it herein.

Mr. Doyle graduated from law school in 2005, but began work after a one-year clerkship, and therefore has approximately 10 years of direct litigation experience. He appears, however, to have no Vaccine Program experience other than this case. *See* Mar. 30, 2016, Doyle Affidavit, attached to Mot. (ECF 27-1). Accordingly, he falls somewhere in the upper end of the $275 to $350 rate scale for like-situated attorneys with eight to ten years of experience. *McCulloch*, 2015 WL 5634342, at *19. Mr. Paschal is a 2008 law school graduate, and similarly has litigation experience not derived from representing petitioners in the Vaccine Program other than in this single instance. *See* Paschal Affidavit, attached to Mot. as Ex. C (ECF No.27-3). He is therefore at the lower end of that same scale.

In the exercise of my discretion, I find that Mr. Doyle should be compensated at a rate of $305 per hour for work performed in 2014 and 2015, adjusted upward in accordance with the Consumer Price Index ("CPI") Calculator to $308 in 2016.[5] *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for review den'd*, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011) (applying CPI calculator in adjusting hourly rate to account for inflation). This determination is consistent with my ruling in *Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559 (Fed. Cl. Spec. Mstr. May 15, 2015), *mot. for review den'd*, 124 Fed. Cl. 225 (2015), *appeal dismissed* (Feb. 9, 2016). There, I awarded a forum practitioner with similar total experience, but greatly more Vaccine Act litigation experience, the same rate. The fact that Mr. Doyle may command a higher rate in his usual practice in Houston or elsewhere, as his affidavit maintains, does not alter my conclusion – for under the Vaccine Act, what determines the sum to be paid to an attorney for representing a petitioner is what other comparable *Vaccine Program attorneys* earn. *Avera*, 515 F.3d at 1348-49.

I will apply the same analysis in awarding Mr. Paschal $275 an hour for work on this case in 2014 and 2015, adjusted in accordance with the CPI to $278 in 2016. As with Mr. Doyle, this appears to have been Mr. Paschal's first Vaccine Program case, and while he appears to have provided useful assistance in the result achieved, he should not receive a rate equivalent to Mr. Doyle, nor should he be compensated on the higher end of the scale until he has demonstrated more Program experience. This is especially so given that he did not actually appear in the case.

---

[5] *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, http://data.bls.gov/cgi-bin/cpicalc.pl (last accessed May 13, 2016) ("CPI Calculator"). There was a negligible increase in inflation between 2014 and 2015, and therefore no adjustment in the relevant hourly rate is appropriate for 2015.

B.      Hours Devoted to Matter

As noted above, special masters are not obligated to scrutinize each entry on a billing record in search of inefficiency. Nor has Respondent identified any objectionable billing instance or category for me. I credit Petitioner's argument that his attorneys acted responsibly in preparing the matter (as reflected in the positive result). The case was resolved in less than a year from its filing date, and without Respondent ever deeming the filing of a Rule 4(c) Report necessary. Counsel unquestionably played a role in the matter's success.

However, I share with Respondent the general view that a case resolved within a year of its filing should not cost tens of thousands of dollars. Indeed, as the billing records reveal, lead counsel had possession of the matter for eleven months before filing, and billed eighty percent of all of his work in the pre-filing period. My overall sense from review of the relevant records is that some of the billing, while not excessive in every instance, was the product of counsel's unfamiliarity with Vaccine Program matters rather than due to the complexity of the issues presented. Indeed, claims that the flu vaccine caused an individual to develop GBS are common – so much so that the Department of Health and Human Services has proposed that the Vaccine Injury Table (42 C.F.R. § 100.3 (2011)) be amended to include GBS as a Table Injury, thereby (where a petitioner can meet the factual prerequisites) easing the burden of establishing entitlement. *See* "Revisions to the Vaccine Injury Table Within the National Vaccine Injury Compensation Program," 80 Fed. Reg. 45132 (proposed July 29, 2015) (to be codified at 42 C.F.R. pt. 100).

Accordingly, I have reviewed the billing records submitted with Petitioner's initial request. Based on that review, I find the following entries as properly reduced or revised:

    1.      *Doyle Reductions*

        a.      Mr. Doyle billed 27.6 hours to unspecified research to Mr. Hudson's claim (5 hours on 3/19/14; 2 hours on 3/20/14; 1.3 hours on 4/7/14; 2.3 hours on 4/10/14; 4.5 hours on 5/6/14; 2.5 hours on 5/8/14; 4 hours on 5/9/14; 4 hours on 5/12/14; and 2 hours on 5/19/14). *See* Ex. A. to Mot. (ECF No. 27-2) at 2-7. This is an excessive amount of time for a flu/GBS claim, and seems to reflect counsel's attempt to learn about the Program generally rather than the specifics of Mr. Hudson's claim. I will therefore reduce this total sum by 30 percent, or **8.28**, and award only **19.32 hours** for these billing entries;

        b.      On April 3, 2014, Mr. Doyle's billing invoices reflect 5 hours of time spent in travel to "Alabama," without specifying how the travel related

to the matter.[6] Ex. A at 2. In addition, it is common practice in Program proceedings to compensate hours spent traveling at one-half of the normal hourly attorney rate. *See, e.g., King v. Sec'y of Health & Human Servs.*, No. 03–584V, 2009 WL 2524564, at *4 (Fed. Cl. Spec. Mstr. July 27, 2009); *Kuttner v. Sec'y of Health & Human Servs.*, No. 06–195V, 2009 WL 256447, at *10 (Fed. Cl. Spec. Mstr. Jan. 16, 2009). But I cannot even tell from this entry to what extent any travel to Alabama was in fact required in the case, or how it relates to Mr. Hudson (or if the Alabama reference was in error). I will therefore reduce this entry by **2 hours**, to account for all of the above, awarding **3hours**; and

c. Mr. Doyle billed a total of 8.2 hours preparing the petition in this case (.7 hours on 11/28/14, 4.5 hours on 1/13/15, and 3 hours on 1/14/15). Ex. A to Mot. at 8. The actual petition, however, is two pages long, and is supplemented by an affidavit from Mr. Hudson that is itself only two pages long. *See* ECF No. 1; Pet'r's Ex. 5. Given the amount of time devoted to this matter before its filing, the drafting of the actual petition itself in this matter should not have required nearly 10 hours of Mr. Doyle's time. I therefore reduce these entries by 50 percent, or **4.1 hours**, awarding the remainder.

2. *Paschal Reductions*

a. Mr. Paschal's time entries include three instances in which he appears to bill for time devoted to determining procedures of ministerial matters involving appearances in the Court of Federal Claims. *See* Ex. B. to Mot. (ECF No. 27-3) at 5-6 (.25 hours on 3/4/14, .5 hours on 3/17/14, 1 hour on 4/9/14, and .25 hours on 5/1/15). This time was inappropriately billed to this matter; a client would not pay an attorney for becoming familiar with such fundamental matters. Accordingly, I will deduct this time, 2 hours, entirely, but award all of the remainder of Mr. Paschal's time.

---

[6] The travel could not have been for the purposes of meeting with Mr. Hudson, for the very same entry indicates that Mr. Doyle so met with his client in Hunstville. *See* Ex. A at 2 (4/3/14 entry). I infer that the Huntsville referenced is the city in Texas rather than in Alabama, given that (a) the vaccine was by Petitioner's own allegation administered in Huntsville, Texas, and (b) the records filed in this case establish that the Petitioner was treated at Huntsville, Texas Hospitals. *See, e.g.*, Pet'r's Ex. 10.

C.   Fees Award Summary

Based upon all of the above, I award the following attorney's fees:

1.   *Tyler Doyle*:

   -   2014 and 2015: 66.02 hours x $305 = $20,136.10

   -   2016: 3.8 hours x $308 = $1,170.40

**Total: $21,306.50**

2.   *Jacob Paschal*:

   -   2014 and 2015: 41.25 hours x $275 = $11,343.75

   -   2016: 2 hours x $278 = $556.00

**Total: $11,899.75**

**III.   Litigation Costs**

Petitioner requests costs in the amount of $1,486.25, for copying, filing fees, and similar charges incurred solely by Mr. Doyle's firm. ECF No. 27. Respondent does not object to these costs as unreasonable, and upon review of the record I find that they are acceptable. I therefore award this sum as a cost.

Petitioner also asks for $6,000 for his expert, Dr. Höke, who prepared a report that was filed shortly after the case's initiation. Pet'r's Ex. 6. I find that Dr. Höke's $500 hourly rate is consistent with what I have previously awarded similarly-situated experts, and that the time spent on the matter was reasonable under the circumstances (especially in convincing Respondent to resolve the case promptly). Despite the fact that the claim was somewhat commonplace, it is my experience that Respondent will sometimes require a petitioner to obtain an expert report even in such cases, and therefore I will not second-guess whether an expert was or was not necessary herein (especially since Respondent has not so argued). I award these expert costs in their entirety.

Finally, Petitioner seeks $10,735.00 for paralegal charges incurred in the case, billed at the rate of $190 per hour, for 56.50 hours of work over the case's lifetime. Ex. A to Mot. (ECF No. 27-2) at 2-11. I find no particular paralegal time entries objectionable, nor did Respondent identify any.

Indeed, in a case like the present, where a petitioner took time to prepare the matter comprehensively before filing, paralegal efforts at obtaining and organizing the relevant record are indispensable. I will therefore award all paralegal hours requested.

However, the requested rate ($190 per hour) is considerably higher than what is considered a top rate for forum paralegal work. *See McCulloch*, 2015 WL 5634323, at *21 (forum rate of $135 an hour for paralegal work). Indeed, it is double what has been most recently awarded for similarly-situated Texas paralegals. *See, e.g., Tieu Binh Le,* 2014 WL 4177331, at *3, 8 ($95 per hour awarded for paralegal tasks performed by attorney); *see also Whitener v. Sec'y of Health & Human Servs.*, No. 06-477V, 2011 WL 1467919, at *7 (Fed. Cl. Spec. Mstr. Mar. 25, 2011) ("in my previous experience, the requested rates of $85 and $100 per hour are commensurate with negotiated rates for Houston, Texas, attorneys practicing in the Program"), (citing *Hughes v. Sec'y of Health & Human Servs.*, No. 04–115V, 2010 WL 5558441 (Fed. Cl. Spec. Mstr. Dec. 15, 2010)). Petitioner has not otherwise established in his fee request why $195 per hour is appropriate in this case. Accordingly, I will instead apply the rate of **$100 per hour** for all paralegal work time requested in this matter.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. Section 15(e). Based on the reasonableness of Petitioner's request, as well as my reductions and hourly fee rate decisions set forth above, I hereby GRANT in part Petitioner's Motion for attorney's fees and costs, as follows:

| **Contested Sum** | **Amount Requested** | **Reduction** | **Total Awarded** |
|---|---|---|---|
| Mr. Doyle's Fees | $33,680.00 | $12,373.50 | $21,306.50 |
| Smyser Firm Costs | $1,486.25 | none | $1,486.25 |
| Mr. Paschal's Fees | $15,837.50 | $3,937.75 | $11,899.75 |
| Dr. Höke's Fees | $6,000.00 | none | $6,000.00 |
| Paralegal Costs | $10,735.00 | 5,085.00 | $5,650.00 |

Accordingly, I award a total of **$46,342.50** as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Mr. Tyler G. Doyle. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.